### Vitalis G. CATTAN, Plaintiff,

v.

### CITY OF NEW YORK, a municipal corporation; The Police Department of the City of New York; Patrol Officer G. R. Colberg, Shield No. 27997, Tax. Reg. No. 859095, individually and as a police officer in the Police Department of the City of New York, Defendants.

No. 80 Civ. 3630 (CBM).

United States District Court,
S. D. New York.

Feb. 20, 1981.

Bloom & Mintz, New York City, for plaintiff.

Allen G. Schwartz, Corp. Counsel, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

MOTLEY, District Judge.

Defendants City of New York and The New York Police Department (referred to as "the City") have moved for summary judgment in their favor pursuant to Rule 56 of the Federal Rules of Civil Procedure.

For the reasons given below, the motion is granted.

## Facts

On August 8, 1979, plaintiff attended a New York Philharmonic concert in Central Park. Plaintiff was arrested by an Officer George Colberg of the New York Police Department. He was taken to the police station house in Central Park, and then to the Manhattan central booking office at Police Headquarters. Plaintiff was informed of his constitutional rights, and charged with disorderly conduct and harassment. Plaintiff was searched, and his personal belongings were then returned to him. He was taken to Bellevue Hospital for treatment of an eye injury sustained when he was arrested. Plaintiff was released from custody after signing a desk appearance ticket. The charges against plaintiff were ultimately dropped after a number of court appearances.

Plaintiff has brought suit against the arresting officer, the City of New York, and The New York Police Department alleging various deprivations of constitutional rights in violation of 42 U.S.C. §§ 1983 and 1985. Plaintiff also alleges violations of state common law including false arrest, assault and battery, and false imprisonment. On January 9, 1981, the City moved for summary judgment with respect to both the Section 1983 and Section 1985 claims. Each claim will be discussed separately.

## Section 1983

In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (*Monell*), the Supreme Court held that a municipality cannot be held liable under Section 1983 on a theory of *respondeat superior*. A municipality may only be held liable under Section 1983 if: (1) some official policy or custom is responsible for the alleged deprivation of constitutional rights; or (2) a failure of supervision or lack of a training program is "so severe as to reach the level of 'gross negligence' or 'deliberate indifference' to the deprivation

of the plaintiff's constitutional rights." *Owens v. Haas*, 601 F.2d 1242, 1246 (2d Cir. 1979). Neither criteria can be met in this case, although plaintiff alleges both.

In an attempt to characterize the alleged deprivation of his constitutional rights as the result of a custom or policy, plaintiff asserts the existence of a custom of policy of ignoring unconstitutional activity in the precinct where the arrest occurred. In support of this contention, plaintiff points to the arrest itself, and the large number of police who witnessed it without coming to his assistance. Apparently the arrest took place while the Central Park Precinct Captain, Gerald McLaughlin, was present, and plaintiff feels this is proof of a precinct-wide "hands off" policy in connection with deprivations of constitutional rights by police in the precinct.

Plaintiff's factual allegations, even if true, are insufficient as a matter of law to prove the existence of the type of policy or custom necessary to make out a cause of action against a municipality under Section 1983. This insufficiency is apparent when the record currently before this court is examined in light of the Second Circuit's recent decision in *Turpin v. Mailet*, 619 F.2d 196 (2d Cir. 1980) (*Turpin*). *Turpin* also involved alleged violations of Section 1983 by police officers, there in the employ of West Haven, Connecticut. The plaintiff prevailed after a jury trial, but after reviewing the evidence, the Second Circuit reversed. Judge Mansfield, writing for the Court, stated in pertinent part:

"We agree that, absent more evidence of supervisory indifference, such as acquiescence in a prior pattern of conduct, a policy could not ordinarily be inferred from a single incident of illegality such as a first arrest without probable cause or with excessive use of force.... However, a single, unusually brutal or egregious beating administered by a group of municipal employees may be sufficiently out of the ordinary to warrant an inference that it was attributable to inadequate training or supervision amounting to deliberate indifference or 'gross negli-

gence' on the part of the officials in charge."

619 F.2d at 202 (footnotes, citations omitted). Thus, a single incident of police brutality, while potentially sufficient in a given case to constitute gross negligence, is insufficient to establish a policy or custom injurious of constitutionally protected rights. Requiring more than a single incident is clearly necessary in the case of a Section 1983 claim involving alleged use of excessive force by arresting officers, because such claims are really attempts to "raise an ordinary tort to a constitutional violation." 619 F.2d at 202, n.6.

■ In *Turpin*, plaintiff was arrested on two separate occasions. In addition, there was a protracted administrative proceeding begun against the arresting officer which was allegedly handled improperly. Nevertheless, the Second Circuit concluded that the plaintiff failed to prove any official policy. Here the evidence and allegations before this court are considerably weaker. Essentially plaintiff contends that the failure of other police to interfere in his arrest constitutes an official policy responsible for the alleged deprivation of his constitutional rights. Not one shred of evidence has been advanced in support of such a pattern of action. In fact, no previous or subsequent examples of this "hands off" policy have even been alleged. Plaintiff's claim that a precinct level policy or custom caused him to be deprived of certain constitutional rights fails to allege a sufficient set of facts which, if true, would enable him to prevail. *See Powell v. Jarvis*, 490 F.2d 551 (2d Cir. 1972).[1]

Plaintiff also seeks to state a Section 1983 claim by attempting to characterize the employment of Officer Colberg as "gross negligence." This negligence supposedly results from the City's continued employment of Officer Colberg even while the City allegedly knew or should have known about Officer Colberg's vicious propensities. *See* Complaint at ¶¶ 16–17. These propensities would have become known to the City if not for inadequate training and supervision of the police force. Again, plaintiff's claim cannot survive analysis in terms of the relevant authority in this Circuit, in particular the recent decision in *Owens v. Haas*, 601 F.2d 1242 (2d Cir. 1979) (*Owens*).

*Owens* involved, *inter alia*, a Section 1983 action by a federal prisoner against Nassau County, New York, and various persons employed within its jail. The suit arose out of injuries received by the plaintiff during an altercation with prison guards while he was being temporarily housed in the state facility. The plaintiff's claim included allegations of improper supervision on the part of Nassau County. While the Second Circuit concluded that the facts in *Owens* merited further proceedings, the description given of the standard which claims of improper supervision must meet is instructive here. The Court stated in pertinent part:

> "The District Court was correct in noting that a mere failure by the county to supervise its employees would not be sufficient to hold it liable under § 1983. However, the county could be held liable if the failure to supervise or the lack of a proper training program was so severe as to reach the level of 'gross negligence' or 'deliberate indifference' to the deprivation of the plaintiff's constitutional rights."

601 F.2d at 1246 (citations omitted).

■ The record reveals only vague and completely conclusory allegations of gross negligence against the City. The single concrete fact pleaded by plaintiff in support of his negligence theory involves two prior

---

1. Although not specifically mentioned in the complaint itself, the affidavit of plaintiff's counsel in opposition to this motion also alleges some policy or custom involving attempts by the New York Police Department to procure "releases" from individuals in exchange for speedy release after arrest. The releases complained of have not been described, and it is not even clear whether plaintiff actually signed one. Plaintiff's counsel has failed to point to even one case in which such a release was ever relied upon by the city. To the extent that this allegation also relies on the single incident involving plaintiff, it suffers from the same proof problems as the allegations of a "hands off" policy in the precinct.

complaints made against Officer Colberg. Upon examination, however, these two incidents actually undercut plaintiff's argument. Records dealing with these two complaints, along with Officer Colberg's personnel records, were submitted to this court for *in camera* review.[2] Review of these records reveals prompt action by the City in response to both complaints. The complaints were investigated by the Civilian Complaints Review Board, witnesses were questioned, and both complaints were ultimately dismissed as unsubstantiated.

This court's rejection of plaintiff's negligence claim also rests on the unrebutted affidavit of Joseph F. Veyvoda, Chief of the Personnel Bureau, New York City Police Department (the Veyvoda Affidavit). The Veyvoda affidavit details the steps taken by the police department to initially screen applicants to the police force, as well as the continuing efforts of the police department to provide further training for police officers throughout their careers. The Veyvoda affidavit also discusses the past record of Officer Colberg. The assertions made in the affidavit are consistent with this court's *in camera* review of Officer Colberg's personnel records. Officer Colberg has no disciplinary record within the police department, has received a number of commendations, and has nothing in his personal background to suggest violent tendencies. In short, it is untenable to say that the continued employment of Officer Colberg was "gross negligence" amounting to "deliberate indifference."

### Section 1985

Plaintiff's failure to state a claim under Section 1985 is closely related to his failure to make out a claim under Section 1983. In *Owens v. Haas, supra,* the plaintiff had also alleged a violation of Section 1985. The brief analysis of the Section 1985 claim is instructive:

"Since under *Monell,* a local body is a 'person' for the purposes of § 1983, we assume that the same definition of 'person' would apply to § 1985, which allows damages whenever two or more 'persons' conspire to violate the civil rights of another. Again the county could not be held liable on a *respondeat superior* theory. However, if Owens' amended complaint alleges an official custom or policy of the county, relating to failure to train or to other matters stemming from or resulting in a conspiracy implicating the county itself, a § 1985 claim will lie."

601 F.2d at 1247 (citations omitted).

■ Plaintiff here does not even allege the existence of a policy or custom of racial discrimination. Instead plaintiff states that various unknown persons have conspired to deprive him of equal protection of the laws because of his Moroccan lineage. *See* Complaint at ¶¶ 28–30. Thus, plaintiff fails to even allege the existence of a set of facts which, if proved, would establish a violation of Section 1985. *See Ellentuck v. Klein,* 570 F.2d 414, 426 (2d Cir. 1978). Even if such an allegation were to be made in an amended complaint, it would suffer from the same proof problems discussed above in connection with plaintiff's claim under Section 1983.

### Conclusion

■ For the reasons just given, the instant claims under Sections 1983 and 1985 against the City of New York and the Police Department of the City of New York are hereby dismissed. Dismissal of the federal claims against the City and the Police Department requires dismissal of the various pendent common law claims involving these two defendants. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Accordingly, the complaint is dismissed in its entirety with respect to the City of New York and the New York Police Department.

So ordered.

---

2. The records involving civilian complaints against Officer Colberg were ordered produced for the inspection of plaintiff's counsel. Officer Colberg's personnel file was returned to the New York City Police Department.