**Joseph ARANCIBIA, Plaintiff,**

v.

**Arthur BERRY, Thomas McGoldrick, and the City of New York, Defendants.**

**No. 82 Civ. 5539 (ADS).**

United States District Court, S.D. New York.

Feb. 25, 1985.

Guy L. Heinemann, New York City, for plaintiff.

Frederick A.O. Schwarz, Jr., Corp. Counsel, New York City (Lori S. Josephs, Brooklyn, N.Y., of counsel), for defendant City of New York.

## MEMORANDUM AND ORDER

SOFAER, District Judge:

Plaintiff, Joseph Arancibia, brought this action for damages pursuant to 42 U.S.C. § 1983 (1982) and New York state law. He alleges that on May 23, 1981 defendants Berry and McGoldrick, who were then New York City police officers, seized him without probable cause and severely beat him. He also alleges that two other police officers who were called to the scene refused to take him to the hospital unless he promised not to report the conduct of defendants Berry and McGoldrick. These allegations are substantiated to some degree by the results of disciplinary proceedings undertaken by the Police Department ("Department"). After a hearing conducted on March 9–10, 1983, the Assistant Commissioner for Trials, Bruce E. Fogarty, issued an opinion on September 22, 1983. He found Arancibia's account of his ordeal "truthful," Opinion at 20 (Heinemann Affidavit, Apr. 24, 1984, Exh. A), and recommended that the two officers be dismissed from the police force. *Id.* at 23. This recommendation was adopted by Commissioner Maguire, and Berry and McGoldrick were dismissed on October 28, 1983.

In 1984, defendants Berry and McGoldrick brought their own civil rights action, *McGoldrick and Berry v. Koch et al.*, 84 Civ. 1335 (ADS), alleging that their constitutional rights to due process and equal protection had been violated by the Department's disciplinary procedures. They sought reinstatement to their positions as police officers and monetary damages. On April 17, 1984, the two actions were consolidated for pre-trial purposes only.

In addition to his allegations concerning Berry and McGoldrick's behavior, Arancibia alleges that the City of New York ("City") is also responsible for his injuries. In his amended complaint, he identifies three theories by which he claims that the acts of defendants Berry and McGoldrick can be imputed to the City. First, he alleges that Berry, McGoldrick, and the two other officers were the "servants, agents,

and employees" of the City at the time the alleged incident occurred. Amended Complaint ¶ 22. Second, he claims that the City "was grossly negligent and deliberately indifferent in the hiring, retention, training, supervision, discipline and assignment" of the officers involved in the incident, because it knew or should have known of Berry and McGoldrick's disposition to engage in the kind of behavior alleged in the complaint and of the willingness of other officers to cover up such behavior. *Id.* ¶ 23. Finally, he claims that the conduct of the officers involved in this case "resulted from a policy, plan, pattern, practice and custom that was acquiesced in and condoned" by the City. *Id.* ¶ 24.

The City has moved for summary judgment pursuant to Fed.R.Civ.P. 56.

■ Arancibia's first theory—that the unconstitutional and illegal acts of Berry and McGoldrick may be imputed to the City because the City was their employer—is nothing more than a claim based on *respondeat superior*. This basis for imposing liability upon a municipality was specifically rejected by the Supreme Court in *Monell v. Department of Social Services,* 436 U.S. 658, 663 n. 7, 691–95, 98 S.Ct. 2018, 2022 n. 7, 2036–38, 56 L.Ed.2d 611 (1978); *see Turpin v. Mailet,* 619 F.2d 196, 199 (2d Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980); *Dominguez v. Beame,* 603 F.2d 337, 341 (2d Cir.1979), *cert. denied,* 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980). Indeed, plaintiff himself concedes the insufficiency of a legal theory based solely upon the employment relationship. *See* Plaintiff's Memorandum of Law at 4 (Apr. 24, 1984).

■ To maintain a cause of action against the City, plaintiff must allege facts sufficient to suggest that the unconstitutional and illegal acts of Berry and McGoldrick were taken pursuant either to an explicit municipal policy or "visited pursuant to governmental 'custom' even though such a custom has not received formal approval...." *Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36. Plaintiff here alleges no express Department policy either ap-

proving the brutal beating of civilians or ordering that police officers cover up the malfeasance of their fellows. Plaintiff must therefore present sufficiently specific factual allegations that there is in fact such a policy. *See Turpin,* 619 F.2d at 199. Plaintiff advances two distinct theories of such a policy.

■ In ¶ 23 of the amended complaint, he alleges gross negligence and deliberate indifference in the Department's personnel policies. *See Owens v. Haas,* 601 F.2d 1242, 1246 (2d Cir.1979) (such claims, if proven, are sufficient for finding municipal liability under § 1983), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979). This theory rests on two factual predicates: first, that Officers Berry and McGoldrick had a propensity toward brutality and excessive use of force and that the other officers had a propensity toward covering up evidence of excessive use of force; and second, that the Department's personnel policy was grossly negligent of and indifferent toward such dangers.

Arancibia has failed to present any facts to support either allegation. He fails to allege that either officer had ever engaged in any behavior that led or should have led the Department to foresee the likelihood of their administering a gratuitous beating to plaintiff. Apparently, plaintiff's counsel chose to rely for support of this suggestion solely on the possibility that the personnel files of the individual defendants might contain evidence of such acts that would suggest that the City was or should have been aware of a danger of brutality toward civilians. *See* Affidavit of Guy L. Heinemann ¶ 4 (Apr. 24, 1984). The files completely contradict plaintiff's assertions, however. Until the time of the incident which gave rise to this action, Berry had been the subject of only one civilian complaint—for "discourtesy." Affidavit of James W. Helbock Regarding Arthur Berry ¶ 16 (May 18, 1984). Moreover, the Court's *in camera* examination of Berry's personnel file disclosed no evidence that could have suggested his "disposition" to use excessive force. Berry was commend-

ed five times for his performance as a police officer. The two reports concerning his discharge of a firearm both concluded that his actions were in keeping with departmental policy regarding the use of weapons. *See* Report from Commanding Officer, Patrol Borough Bronx to Chief of Operations (June 24, 1981); Report from Commanding Officer, Patrol Borough Bronx to Chief of Operations (Aug. 13, 1980). The performance evaluation form used by the Department, PD439–157, specifically requires the rater "to comment as to the individual's overall behavior in enforcement and regulatory situations as well as his/her use of appropriate and justifiable force." *Id.*, Standard 8. Berry's 1982 evaluation stated that he "maintains control in inciden[ts] of stress," and "[u]ses only justifiable force." His 1978 evaluations characterized his as a "stable individual [who has] no problem regarding use of force." Similar assessments appear in his 1980 and 1981 evaluations, as well as in the more detailed reports filed when he was a probationary police officer.

The evidence concerning McGoldrick is similar. Until the time of this incident, he was the subject of only two civilian complaints for discourtesy, one of which was "ultimately unsubstantiated," the other of which was "informally conciliated." Affidavit of James W. Helbock Regarding Thomas McGoldrick ¶ 16 (May 18, 1984). He had received a commendation for "excellent police duty." His 1980 performance evaluation stated that he "[s]tays well within the department guidelines on the use of justifiable force," and his 1981 evaluation expressed similar sentiments.

In support of his theory that the City's personnel policies were grossly negligent and deliberately indifferent, plaintiff relies on nothing more than sweeping assertions, unsupported by any specific factual allegations. Such claims cannot survive a motion for summary judgment. *See Boorstin v. City of New York*, 82 Civ. 7887, slip op. at 4 (S.D.N.Y.1984); *Cattan v. City of New York*, 523 F.Supp. 598, 601–02 (S.D.N.Y. 1981).

In *Cattan*, Chief Judge Motley set out criteria for assessing claims of gross negligence and indifference against police departments based on allegations of brutality by individual police officers. She granted summary judgment for the municipal defendants in *Cattan* based upon the "unrebutted affidavit" of the chief of the police department's personnel bureau "detail[ing] the steps taken by the police department to initially screen applicants to the police force, as well as the continuing efforts of the police department to provide further training for police officers throughout their careers," *id.* at 602, and upon the absence of any facts regarding the specific officer involved "to suggest violent tendencies," *id.* She concluded that under such circumstances, "it is untenable to say that the continued employment of [the defendant officer] was 'gross negligence' amounting to 'deliberate indifference.'" *Id.*

This case is virtually identical to *Cattan*. The City has submitted detailed affidavits of James W. Helblock, Inspector in command of the Department's Personnel Bureau, and of Richard Koehler, Assistant Chief in command of the Bureau. These affidavits discuss the comprehensive background checks and psychological screening undertaken in evaluating candidates for positions as officers; the training that officers receive, in the classroom, in various role-playing workshops, and in a supervised recruit field training program; the periodic evaluations made of officers' performance; the various programs established to treat officers suffering from psychological problems that could impair their performance; and a number of formal review procedures that deal with such circumstances as civilian complaints and discharge of weapons.

■ Plaintiff has failed to respond in any substantive way to the evidence presented in the Helblock and Koehler affidavits. He alleges no specific inadequacies in the Department's selection, training, or review procedures. His reliance on *Owens v. Haas* is therefore misplaced. There, the Second Circuit held that the suit against the county should not have been dismissed

because plaintiff should have been given the opportunity for limited discovery to determine whether a case "[could] be made for deliberate indifference by the county." 601 F.2d at 1247. Here, plaintiff has failed to request any discovery that could possibly lead to evidence of gross negligence or deliberate indifference in the training and supervising of the police force. Having failed to attempt to obtain information to support his claim, plaintiff cannot now rely on the incompleteness of the record to avoid summary judgment. *See* Plaintiff's Memorandum at 7 (arguing that constitutional questions should not be decided on "an inadequate factual basis"); *cf. Bonsignore v. City of New York,* 521 F.Supp. 394, 402 (S.D.N.Y.1981), *aff'd,* 683 F.2d 635 (2d Cir.1982). Because plaintiff has failed to allege specific facts to support his theory of gross negligence or deliberate indifference, this claim must be dismissed.

Plaintiff's other theory of the City's culpability—that the officers' conduct was the result of "a policy, plan, pattern, practice and custom," Amended Complaint ¶ 24—is similarly insufficient to sustain his cause of action against the City. This potential basis for liability is distinct from that asserted in ¶ 23 of the amended complaint, in that it apparently alleges pervasive behavior by members of the Department, of which the mistreatment of plaintiff is but one example. Moreover, it appears to allege acts of commission by the Department, rather than of omission.

Plaintiff has failed to allege with any specificity the policy, plan, pattern, practice, or custom involved in this case. Assuming for the sake of argument that the policy he alleges is one of police brutality and suppression of evidence, he has failed to allege a single "previous or subsequent exampl[e]" of such a policy. *Cattan,* 523 F.Supp. at 601.

■ In this regard, plaintiff's reliance on *Owens v. Haas* and *Turpin v. Mailet* is misplaced. He points to language in those cases which states that a single, particularly egregious example of brutality may be sufficient to warrant an inference of inade-

quate training or supervision. We have already discussed, however, why plaintiff's allegations in this case do not support the allegation of negligence or indifference. In this final theory of municipal liability, however, plaintiff is not alleging negligence, which might perhaps be inferred from a particular act, but a pattern, practice, or custom. The existence of a pattern simply cannot be inferred from one incident, particularly one which lacks the egregious qualities plaintiff claims. Plaintiff has made virtually no effort to discover, and has made no allegations in response to the City's motion concerning, any pervasive series of episodes similar to the one in which he was involved. *See Bonsignore,* 521 F.Supp. at 402 n. 3.

Moreover, the City has explicitly denied this allegation. *See* Affidavit of Richard Koehler ¶ 2 (July 25, 1984) ("there is no policy or practice of the New York City Police Department to condone, permit or in any other manner tolerate the use of excessive force or the cover-up of the same"). The Department's behavior in this case supports the details outlined in Koehler's affidavit. The Department initiated disciplinary proceedings against Berry and McGoldrick which resulted in their dismissal from the force. In recommending this action, the Assistant Commissioner for Trials found that their conduct "represent[ed] a total breach of their sworn obligation to protect the public from violence and injury," Opinion at 22, that they had "stooped to the level of thugs," *id.,* and that their actions were "reprehensible," *id.* at 23. He concluded that "[t]he Department has an obligation to the public to insure that police officers who have demonstrated violent and brutal behavior are never given another opportunity to misuse their official position and bring shame upon themselves and discredit upon the Department." *Id.* Plaintiff has failed to point to any facts to suggest the opposite of these findings and conclusions. *Cf. Cattan,* 523 F.Supp. at 602.

Plaintiff argues that, even if his federal claims against the City are dismissed, this

court should retain jurisdiction over his state-law claims against the City. Plaintiff's Memorandum at 8–10. *United Mineworkers v. Gibbs,* 383 U.S. 715, 725–27, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966), sets out the general standard for the exercise of pendent jurisdiction. Pendent jurisdiction is a doctrine of discretion, rather than right, which may be exercised when the federal and state claims arise from a common nucleus of operative fact. Normally, if the federal claims are dismissed before trial, the state claims should be dismissed as well. In this case, far less overlap exists in the nuclei of operative fact than plaintiff suggests. The only facts that need be determined with regard to plaintiff's claims against Berry and McGoldrick center on what, if anything, those two officers did to plaintiff on May 23, 1981. To determine the City's liability for Berry and McGoldrick's alleged false arrest, false imprisonment, and assault and battery, however, would require examination of the City's relationship with its employees under state law.

■ In any event, this case does not involve standard, "pendent-claim" jurisdiction. Rather, plaintiff is asking this court to exercise "pendent-party" jurisdiction by hearing non-federal claims involving a party against whom no federal claim exists. Whether this court is entitled to exercise "pendent-party" jurisdiction with regard to the issues involved in this suit is unclear. In *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), the Supreme Court held that 28 U.S.C. § 1343, the jurisdictional provision involved in section 1983 suits, does not grant the district courts jurisdiction over statelaw claims. One basis of *Aldinger*'s holding was, of course, that such municipalities were immune from suit under section 1983, a bar that was overruled in *Monell.* While *Owen Equipment Co. v. Kroger,* 437 U.S. 365, 372 n. 12, 98 S.Ct. 2396, 2402 n. 12, 57 L.Ed.2d 274 (1978), points out that *Monell* undercuts the specific holding of *Aldinger,* the general observation that "pendent-party" jurisdiction ought to be employed more sparingly than "pendent-claim" jurisdiction, 427 U.S. at 18, 96 S.Ct. at 2422, remains sound.

*Cf. Irwin v. Calhoun,* 522 F.Supp. 576 (D.Mass.1981). In addition, although the absolute bar against section 1983 suits against municipalities has been lifted, the general policy considerations that militate against forcing municipalities to litigate in federal courts the legality of their practices under state law also remain sound.

■ The court has considered the possibility that the City should remain a party, through pendent-party jurisdiction, because this case should be consolidated for trial with *McGoldrick and Berry v. Koch.* While the two cases were properly consolidated for pre-trial purposes, consolidation for trial would be inappropriate. A consolidated trial would create significant potential for prejudice against plaintiff Arancibia and a significant danger of confusion of the issues by the jury. Moreover, the City may yet file pretrial motions in *McGoldrick and Berry* which will end that case without a trial. Indeed, a trial of that case may be rendered wholly or largely unnecessary if this case ends in a verdict for Arancibia. Therefore, the fact that the City presently remains a defendant in the suit by the two former officers fails to make its retention in this suit appropriate.

The City's motion for summary judgment on plaintiff's federal claims and its motion to dismiss plaintiff's state-law claims are granted.

SO ORDERED.