Joseph A. SKORUPSKI and Angela
Skorupski, Plaintiffs,

v.

COUNTY OF SUFFOLK, Suffolk County
Police Department, Dennis Kiernan,
Kenneth Watson, George Riker and
Raymond Richmond, Defendants.

Civ. No. 86–0219.

United States District Court,
E.D. New York.

Feb. 4, 1987.

Tartamella and Fresolone, Commack, N.Y., for plaintiffs; Joseph A. Bollhofer, of counsel.

Martin Bradley Ashare, Suffolk Co. Atty., Hauppauge, N.Y., for defendants; James M. Catterson, of counsel.

BARTELS, District Judge.

Plaintiff Joseph Skorupski and his mother, Angela Skorupski, bring this action under 42 U.S.C. § 1983, against Suffolk County, the Suffolk County Police Department and several Suffolk County Police Officers, charging defendants with violations of Skorupski's civil rights. Plaintiffs also assert pendent claims under the New York Constitution and state common law. Plaintiff's claims arise out of his arrest and an alleged assault upon him on the evening of July 20, 1985, by members of the Suffolk County Police Department who mistook plaintiff for an armed robbery suspect. Defendants now move for summary judgment on plaintiff's federal claims against all defendants, pursuant to Federal Rule of Civil Procedure 56. The relevant facts are as follows.

*Facts*

At approximately 10 p.m. on July 20, 1985, Joseph Skorupski, then 17 years old, was walking along Roule 112 in Medford, Suffolk County, Long Island. Plaintiff alleges that as he was walking, one of the defendant officers pulled up in an unmarked pickup truck, got out displaying a pistol and, without identifying himself as a police officer, threatened to kill plaintiff, whereupon plaintiff fled. Plaintiff saw several other men holding rifles who gave chase, none of whom, plaintiff claims, was in uniform or identified himself as a police officer. Shortly thereafter the rifle of one of the officers, defendant Riker, discharged and plaintiff collapsed on the ground. Plaintiff alleges that while he was face down on the ground, one or more of the defendant officers kicked him, hit him on the head and back with a hard instrument, placed a gun in his mouth and threatened to kill him, and then handcuffed him. While this was going on plaintiff was screaming for help and asking the officers if they were crazy and what they wanted with him.

After the plaintiff was handcuffed, defendant Detective Densing arrived in a police car and plaintiff was placed in the back seat. In the car, plaintiff's wallet containing identification was examined and Densing determined that they had the wrong man. Densing removed the handcuffs, offered the plaintiff medical attention, took a short statement from the plaintiff, which plaintiff refused to sign, and then took him home to his parents' house. Plaintiff's parents took him to Brookhaven Hospital emergency room where he was treated for bruises, contusions and lacerations, and admitted overnight for observation. Plaintiff was described by the examining doctor, in his affidavit, as "crying and visibly extremely upset." The doctor phoned the police that evening to report the incident. Plaintiff was seen by a psychiatrist the next day and two or three times thereafter

for emotional problems related to the incident, and plaintiff currently sees a psychiatric social worker.

In addition to plaintiff's accounts of the incident, plaintiff has submitted the deposition testimony of one Rick Criscuolo, who was working in a garage that evening and witnessed plaintiff's arrest. Criscuolo's testimony corroborates many details of plaintiff's claims, including the officers kicking plaintiff a number of times. According to Criscuolo's testimony, Criscuolo was aware, from previous conversations with police officers and from friends who had been stopped and questioned by the police, that the Suffolk County police were conducting an intensive search for one Wakefield, a suspect in a number of armed robberies and rapes in the area. Criscuolo stated that a few days before Skorupski's arrest, an officer told him that his niece had been raped by Wakefield and that he would give Wakefield "a real good beating" when he caught him. Criscuolo's testimony also indicates that there were a number of other witnesses to the Skorupski arrest and that several police officers admitted to him afterwards that they were aware of Skorupski's beating.

Defendants admit that they mistakenly arrested plaintiff on July 20, 1985, but, not surprisingly, deny any excessive use of force or other violation of plaintiff's civil rights. According to defendants, on that evening the police officers involved were looking for Wakefield who was reported to have attempted an armed robbery of a gas station on Route 112 in Medford a short time earlier that evening. According to police reports, Wakefield's physical appearance was similar to plaintiff's and Wakefield was wearing a shirt similar in color to plaintiff's shirt, although other aspects of plaintiff's dress apparently did not fit Wakefield's description. Because of these similarities between plaintiff and Wakefield, defendants claim they had probable cause to stop plaintiff and further contend that they used only such force as was reasonably necessary to arrest someone believed to be armed and dangerous. All the officers specifically deny kicking or striking the plaintiff at any time.

That same evening following the incident, the Police Department sent an officer to Brookhaven Hospital to interview plaintiff, but the officer got no information from plaintiff or his family, reportedly because they were too upset and angry to discuss the incident. Defendants also investigated the discharge of Riker's weapon, concluding that it had been fired accidentally when Riker tripped while running. Plaintiff subsequently filed a Notice of Claim, as required by New York General Municipal Law § 50–e; however, there is no evidence of any further investigation of the incident by the County or Police Department and no action was taken against any of the officers involved.

In addition to their claims against the individual officers, plaintiff asserts the liability of the County and the Police Department on grounds that those entities had in effect a policy and practice of condoning this type of conduct by failing to investigate, discipline or otherwise supervise officers in order to deter abuses. These circumstances, plaintiff alleges, amounted to a policy of deliberate indifference to the excessive use of force by police officers. In support of this claim, plaintiff relies predominantly upon a document entitled "Report of the Civil Rights Committee on Allegations of Police Brutality in Suffolk County," issued in 1980 by the Suffolk County Bar Association. That Report, prompted by a National Law Journal article on the same subject, documented extensively the rising number of police brutality cases in Suffolk County up to 1980, and the nonexistence or inadequacy of procedures for investigating and deterring such incidents. Plaintiff asserts that this report, several ongoing investigations of the Suffolk County Police Department, and such Department's alleged failure to adequately investigate the Skorupski incident are sufficient to create a triable issue of fact concerning the existence of a policy on the part of the municipal defendants of deliberate indifference to widespread use of excessive force by police officers.

*Discussion*

In ruling on a motion for summary judgment it is hardly necessary to state that the Court, resolving all ambiguities and inferences in favor of the non-moving party, *United States v. One Tintoretto Painting*, 691 F.2d 603, 606 (2d Cir.1982), may grant the motion only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980). With these principles in mind, the Court addresses plaintiff's various claims.

### 1. *Probable Cause to Arrest*

Plaintiff claims that his arrest violated his right, under the Fourth and Fourteenth Amendments, to be free from unreasonable seizure. Leaving aside for the moment the legality of defendants' conduct in effecting plaintiff's arrest, plaintiff's constitutional rights are not violated by the arrest, even though mistaken, if the police had "probable cause to arrest the person sought, and the arresting officer reasonably believed that the arrestee was that person." *United States v. Valez*, 796 F.2d 24, 26 (2d Cir.1986); *Hill v. California*, 401 U.S. 797, 802, 91 S.Ct. 1106, 1110, 28 L.Ed.2d 484 (1971).

Defendants have offered uncontroverted evidence of probable cause to arrest Wakefield, an armed suspect in numerous robberies and rapes who was being sought for an armed robbery attempted that very evening. Whether the arresting officers reasonably mistook plaintiff for Wakefield depends on "the totality of the objective circumstances surrounding the arrest." *United States v. Valez*, 796 F.2d at 26. According to a police report, prepared after the incident, Wakefield was described as a white male, 24 years, 6 feet, 160 lbs., with dark hair and a mustache, wearing blue jeans, a maroon T-shirt and a black jacket. It is undisputed that plaintiff also is a white male who at the time had dark hair and a mustache and was wearing a light maroon shirt and shorts. Furthermore, plaintiff has not denied that plaintiff appeared to be 6 feet, 160 lbs., or otherwise fit Wakefield's physical description. The only apparent differences between the two were their age and the fact that plaintiff was wearing shorts, not jeans. Finally, plaintiff was seen by the officers a short time after the attempted robbery walking in the area where the attempt had occurred.

■ Under the circumstances just described, and in the absence of any evidence from the plaintiff to the contrary, the Court finds that there is no genuine issue of fact with respect to the reasonability of the officers' belief that the plaintiff was the suspect Wakefield whom they had probable cause to arrest. However, the separate issue of the propriety of defendants' conduct in effecting that arrest presents more problems.

### 2. *Excessive Use of Force*

■ With regard to plaintiff's claim that excessive force was used in effecting his arrest, there is clearly an issue of fact precluding summary judgment. Plaintiff has alleged gratuitous and excessive use of force, *see Hodges v. Stanley*, 712 F.2d 34, 36 (2d Cir.1983) (*per curiam*), and the evidence submitted by plaintiff consists not only of his own accounts, but also of corroborating testimony from a third-party eye witness and medical evidence supporting plaintiff's claimed injuries. The fact that defendants, in their deposition testimony submitted in support of their motion, deny striking plaintiff obviously does not entitle them to judgment as a matter of law. On the record before the Court, it is for the jury and not the Court to determine which of the conflicting accounts of this incident to believe. *See Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973) (whether excessive force has been used depends on "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or

maliciously and sadistically for the very purpose of causing harm.").

■ Defendants' argument that they are entitled to summary judgment because plaintiff cannot specify which of the officers actually struck him is unavailing. All the named defendants, with the exception of Detective Densing, have admitted being present during the arrest, and two, Kiernan and Watson, admit physical contact with plaintiff when they pulled his arm out from under him in order to determine whether he had a weapon. The law is clear that a police officer has an affirmative duty to intervene and prevent the unlawful use of force by other officers in his presence. As was stated in the leading case on this issue, *Byrd v. Brishke*, 466 F.2d 6 (7th Cir.1972), although the plaintiff could not identify which officer struck him, the defendant officers were liable under § 1983 since "a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." *Id.* at 11. *See also Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir.1986); *Webb v. Hiykel*, 713 F.2d 405, 406 (8th Cir.1983); *Gagnon v. Ball*, 696 F.2d 17, 21 (2d Cir.1982); *Brumer v. Dunaway*, 684 F.2d 422, 426 (6th Cir.1982).

■ With regard to defendant Densing, the evidence consistently shows that he did not arrive on the scene until after plaintiff was handcuffed and therefore was not present during the alleged beating. Plaintiff has stated in his papers and at the hearing before the Court that he will consent to dropping Densing as a defendant.

### 3. *Liability of the Municipal Defendants*

In order to hold the County and the Police Department liable under § 1983 for the officers' conduct, plaintiff must establish the existence of a policy which encouraged or condoned the officers' unconstitutional actions alleged herein. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). As this Circuit's Court of Appeals has recently stated, such a policy may be found where it is shown "that the City was knowingly and deliberately indifferent to the possibility that its police officers were wont to use excessive force and that this indifference was demonstrated by the failure of the City defendants to exercise reasonable care in investigating claims of police brutality in order to supervise the officers in the proper use of force." *Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 326 (2d Cir.1986). Although plaintiff is not specific in his complaint, it is apparent from his motion papers that he seeks to hold the municipal defendants liable upon a theory that those defendants had a policy of non-supervision amounting to deliberate indifference to the use of excessive force.

In *Fiacco*, the Court of Appeals held that such a policy was sufficiently proved by evidence of (1) a substantial number of complaints of police brutality, although unadjudicated, made to the City during the five years prior to the incident therein; (2) the testimony of several of the complainants; (3) failure of the City to implement investigative procedures, to conduct any investigation other than to have a supervisory officer talk to the officer involved, or to take any action against any officer; and (4) the lack of any specific guidelines for the use of force or rules for police discipline. *Id.* at 328–332.

The Bar Association Report relied upon by plaintiff here indicates that at the time of that Report, much the same evidence of deliberate indifference existed with regard to Suffolk County. Plaintiff also asserts that the County failed to adequately investigate the incident herein and take appropriate action against the officers involved, and that this demonstrates the continued existence of a policy of non-supervision and deliberate indifference to the excessive use of force.

■ Furthermore, plaintiff argues that a Memorandum of Law, filed on September 5, 1986 by the New York State Investigation Commission pursuant to *Suffolk County PBA v. Suffolk County Police Dep't and Comm'n of Investigation of the*

*State of New York* (Index No. 86–15792, J. McInerney), a pending state court action, suggests that the plaintiff satisfies the requirements of *Monell.* This Memorandum, however, merely states that an inquiry into the Suffolk County Police Department's method of investigating homicides was initiated after allegations of misconduct were received by the Commission of Investigation. More importantly, this Memorandum is not admissible evidence upon the issue presently before us.

■ In addition, plaintiff also cites an allegedly separate, ongoing investigation of the Suffolk County Police Department by the New York State Commission on Criminal Justice and the Use of Force. No specifics or results, however, have been provided by plaintiff regarding either the scope or focus of this investigation, which renders the Court incapable of determining its significance and, at all events, such investigation is inadmissible hearsay evidence in this case.

Finally, plaintiff points to defendants' admission, in a letter from defendants' attorney, that no forms are used by the Police Department in the evaluation of officers as further evidence of the County's policy of non-supervision. Apparently there also exist a number of more recent complaints charging excessive use of force by the officers involved herein not cited by plaintiff but which have been ordered turned over to plaintiff by the Magistrate overseeing discovery in this action.

On the other hand, defendants have submitted an affidavit from Suffolk County Police Inspector Snow, the commanding officer of the Inspectional Services Bureau responsible for investigating complaints against police officers. The affidavit states that in 1984 there were 76 complaints of police misconduct filed, 53 of which alleged excessive use of force. All of these complaints were investigated, and 25 were "sustained," resulting in disciplinary action against the police officer involved. In 1985 there were 67 complaints of police misconduct filed and investigated, 52 of which alleged excessive use of force.

Twelve of these complaints resulted in disciplinary action, and 31 complaints are still under investigation. According to the affidavit, there has been no case in 1984 or 1985 alleging excessive force in which liability was found against the Police Department. Snow avers that it is the Department's policy to investigate all claims and to discipline officers found to have violated the Rules and Procedures of the Suffolk County Police Department.

Although Snow's affidavit does not specify the procedures currently used to investigate complaints and discipline officers, it does present a markedly different picture of investigation and supervision of police officers by the Department than that presented in the 1980 Bar Association Report. For example, the Report indicated that in 1978 there were 93 complaints of undue use of force alone, of which only 5 resulted in discipline, and in 1975 there were 83 complaints with no disciplinary action taken. The Report also noted the findings by several courts, in the years before 1980, of a pattern of excessive use of force and inadequate supervision by the Suffolk County Police. Snow's affidavit, by contrast, shows significantly fewer complaints of any police misconduct in the years relevant to this case and a higher percentage of cases resulting in disciplinary action.

■ The plaintiffs, after extensive discovery, have presented no evidence contradicting Snow's affidavit, nor did they cite or point to any complaints that were not investigated, nor any instances where discipline was not, but should have been, imposed. Moreover, they presented no other evidence showing that in 1985 the County or its Police Department had a policy of non-supervision amounting to deliberate indifference to the use of excessive force by police officers. The 1980 Bar Association Report, which plaintiffs heavily relied upon, was not admissible as evidence of the County's policy in 1985, five years later. The Court, therefore, finds no genuine issue of fact concerning the alleged policy of indifference during the period involved and accordingly grants the defendants Suffolk

County and its Police Department summary judgment with respect to plaintiffs' § 1983 claim.

### 4. Pendent Jurisdiction

The plaintiffs request this Court to exercise pendent jurisdiction over the County defendants in order to retain them in this case, as well as pendent claim jurisdiction over plaintiffs' state law claims asserted against defendant police officers in their individual capacity. At the threshold, we keep in mind the difference between pendent party and pendent claim jurisdiction. As stated by the Supreme Court in *Aldinger v. Howard,* pendent party jurisdiction is available only when it is not precluded by either Article III of the United States Constitution or by Congress, expressly or impliedly. 427 U.S. 1, 16–17, 96 S.Ct. 2413, 2421, 49 L.Ed.2d 276 (1976), *overruled on other grounds, Monell, supra. See also Amoco Oil Co. v. Local 99, Intern. Broth. of Elec. Workers, AFL–CIO,* 536 F.Supp. 1203 (D.C.R.I.1982). Of course, even where pendent party jurisdiction does exist, its exercise is in the sound discretion of the court. *Independent Bankers Ass'n of N.Y. State Inc. v. Marine Midland Bank, N.A.,* 575 F.Supp. 1425 (W.D.N.Y.1983).

■ In a somewhat different factual context than is presented here, the *Aldinger* Court determined that Congress, upon passing 42 U.S.C. § 1983, impliedly negated the availability of pendent party jurisdiction in actions undertaken pursuant to it. 427 U.S. at 16–17, 96 S.Ct. at 2421. Since *Aldinger,* there has been no Second Circuit opinion in which pendent party jurisdiction was exercised to keep a municipality in a plaintiff's § 1983 claim against such municipality's employees. However, there have been some conflicting district court opinions on this issue. Specifically, in both *Sanabria v. Monticello,* 424 F.Supp. 402, 405 n. 2 (S.D.N.Y.1976), and *LaRocco v. City of New York,* 468 F.Supp. 218 (E.D.N.Y.1979), it was held that the court lacked pendent party jurisdiction in fact situations virtually on point with the instant one. By contrast, the court in *Arancibia v. Berry,* 603 F.Supp. 931 (S.D.N.Y.1985), declined to exercise pendent jurisdiction in a case which was, again, virtually identical to plaintiffs' situation here. We follow the *Arancibia* approach, for the reasons cited therein.

■ However, plaintiffs' request that the Court exercise pendent claim jurisdiction presents a different story. The plaintiffs' state law claims sound primarily in tort and have been asserted against defendant police officers in their individual capacities. Although pendent jurisdiction over these claims does exist, the Court declines to exercise it. In so doing, we defer to the Court of Appeals' recommendation that such jurisdiction not be exercised over divergent state law claims when that exercise will likely result in jury confusion. *Federman v. Empire Fire and Marine Ins. Co.,* 597 F.2d 798 (2d Cir.1979). *See also Maltais v. United States,* 439 F.Supp. 540, 549 (N.D.N.Y.1977). In this case, we believe such confusion would be present if plaintiff were to combine his state law and § 1983 claims. *See Christensen v. Phelan,* 607 F.Supp. 470 (D.C.Colo.1985); *Douglas v. Town of Hartford, Conn.,* 542 F.Supp. 1267, 1271 (D.C.C.Conn.1982).

### Conclusion

For the above reasons, defendants' motion for summary judgment is granted with regard to plaintiff's claims (1) of unlawful arrest, (2) against Detective Densing, and (3) against the County and the Police Department. Defendants' motion is denied with regard to plaintiff's claims against the remaining individual defendant officers alleging use of excessive force.

SO ORDERED.