Roger VIPPOLIS and Deborah Vippolis, Plaintiffs-Appellees-Cross-Appellants,

v.

The VILLAGE OF HAVERSTRAW and the Haverstraw Village Police Department, Defendants-Appellants-Cross-Appellees.

Nos. 839, 910, Dockets 84–7046, 84–7944.

United States Court of Appeals, Second Circuit.

Argued March 7, 1985.

Decided July 16, 1985.

Michael F. Close, New York City (Barry, McTiernan & Moore, New York City, on the brief), for defendants-appellants-cross-appellees.

Harry E. Youtt, New York City (Herbert W. Fischman, New York City, on the brief), for plaintiffs-appellees-cross-appellants.

Before TIMBERS, NEWMAN and KEARSE, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal concerns the proof needed to establish municipal liability under 42 U.S.C. § 1983 for an alleged denial of constitutional rights by a police officer. Roger Vippolis brought this action in the District Court for the Southern District of New York (Mary Johnson Lowe, Judge), claiming that Michael Squillini, a member of the police department of Haverstraw Village, New York, had beaten him with excessive force, arrested him on false charges, and initiated a criminal prosecution on those charges, thereby depriving him of his constitutional rights. In addition to Squillini, Vippolis named as defendants Squillini's employers, the Village of Haverstraw and the Haverstraw Village Police Department (collectively "the municipal defendants"). Responding to questions on a special verdict form, the jury exonerated Squillini of liability but found the municipal defendants liable and awarded compensatory damages against them on the theory that they had failed properly to train Squillini. The municipal defendants appeal from the judgment entered on the jury's verdict, and Vippolis cross-appeals from the District Court's denial of his motion for a new trial on damages. We reverse and remand to the District Court with instructions to dismiss the complaint.

BACKGROUND

This dispute arose out of a fight that occurred between Vippolis and Squillini when Squillini followed Vippolis to his home in order to give him a warning for a minor traffic violation. Though the parties agree that, in the course of the fight, Squillini struck Vippolis on the head with a blackjack, they dispute the circumstances leading up to that action. Vippolis testified that he verbally objected to Squillini's warning and that, without provocation, Squillini attacked him with the blackjack, striking him at least six times on the head. Squillini testified that he warned Vippolis not to drive so fast and that Vippolis responded by using obscene language to order him off the property. Squillini then informed Vippolis that he was under arrest and reached for his handcuffs. At that point, Squillini testified, Vippolis grabbed him by the throat and forced him to his knees. To protect himself from this attack, Squillini reached for his blackjack and swung three times at Vippolis, striking him on the head. Based on Squillini's version of this episode, Vippolis was arraigned on charges of assault, obstructing governmental administration, and disorderly conduct. These charges were dismissed following a state criminal trial.

Vippolis's case against the municipal defendants was based primarily on testimony of Michael Holland, chief of the Haverstraw Village Police Department, who testified on Vippolis's direct case. Through Holland's testimony, Vippolis sought to hold the municipal defendants liable on two different theories. First, by questioning Holland about police procedures for disciplining officers, Vippolis sought to establish a departmental practice of taking no action against officers charged with violating citizens' civil rights. In connection with this theory, counsel for Vippolis questioned Holland about the handling of misconduct charges lodged against individual officers. Two of the alleged episodes of misconduct involved Squillini. Second, by eliciting from Holland the fact that Squillini had been hired without receiving the formal training required by state law,[1] Vippolis sought to establish that the municipal defendants had a policy of inadequate training of police officers. Holland conceded that he was aware that state law required all officers to complete a training program and that Squillini, a part-time officer, had not done so. Holland explained that Squillini was given "on-the-job training" by senior officers, including Holland himself. Significantly, Vippolis's lawyer did not ask Holland to describe the subjects covered in the required training program or in the on-the-job training given Squillini. On cross-examination, counsel for defendants tried to elicit this information, but Holland was not permitted to answer because objections by Vippolis's lawyer were sustained.[2] Holland was permitted to state only that Squillini did not attend the formal program because, despite Holland's efforts to establish one, there was no school for part-time officers located within the county.

Squillini also testified about his training. On direct examination, he stated that, for approximately one and one-half years, the police department "sent [him] out" with

1. New York General Municipal Law § 209–q(1) (McKinney 1974) provides in pertinent part that no person shall ... receive an original appointment on a permanent basis as a police officer ... unless such person has previously been awarded a certificate ... attesting to his satisfactory completion of an approved municipal police basic training program; and every person who is appointed on ... other than a permanent basis as a police officer ... shall forfeit his position as such unless he previously has satisfactorily completed ... a municipal police basic training program for temporary or probationary police officers and is awarded a certificate ... attesting thereto.

2. The record does not disclose the grounds on which the objections were made and sustained. However, the defendants' lawyer attempted to explain to the District Judge that he pursued this line of questioning in order to show that there was no proximate cause between Squillini's failure to take the training program and Vippolis's injuries. Since comparison of the training program and Squillini's on-the-job training was critical to the issue of proximate causation, the District Court should have permitted testimony on these matters.

experienced officers, who taught him his duties as he worked. He further testified that, during this period, he was not permitted to "go out" by himself. On cross-examination, Squillini stated that he had applied for a position as a part-time officer in the spring of 1970 and that he was hired on July 2, 1970. On the day that Squillini was hired, the police department issued him a badge, a night stick, and a gun. Squillini stated that he received no manual on "how to become a policeman" and that he took no course in constitutional law. He also testified that he took no course on how to make arrests, but that he learned about arrest procedures through departmental "briefings" and through reading log books.

The jury's verdict was recorded on a special verdict form. With respect to Squillini's liability, the form contained three questions based on the claims of excessive force, false arrest, and malicious prosecution. The jury found that Vippolis had not established Squillini's liability on any of these claims. The verdict exonerating Squillini could have meant either that Vippolis had not proven any denial of constitutional rights or that Squillini had proven his entitlement to the defense of qualified immunity. The verdict form would have been more helpful if it had asked in separate questions whether the officer had denied the plaintiff a constitutional right in any of the three respects claimed (each of which could have been listed on the form for appropriate marking by the jury), and, if so, whether the officer had established his good-faith defense.[3]

With respect to the municipal defendants' liability, the form asked a two-part question. The first part asked if the municipal defendants were liable on the theory that they "[m]aintained a policy or custom of inaction against officers charged with violating the civil rights of citizens which resulted in the infliction of plaintiff's injuries." The jury responded to this question in the negative. The second part asked if the municipal defendants were liable on the theory that they "[h]ired police officers in violation of State law and provided inadequate training and supervision for Officer Squillini thereby indicating their deliberate indifference or gross negligence." The jury answered this question affirmatively and awarded damages of $35,000 to Vippolis for his injuries and $15,000 to his wife for loss of consortium. Judge Lowe rejected Vippolis's claim, on his motion for a new trial on damages, that the interrogatory responses were inconsistent, pointing out that the jury could have concluded that Squillini denied Vippolis one or more constitutional rights, that the municipal defendants were liable for causing the violation, and that Squillini was not personally liable because he had established his good-faith defense.

We need not consider all of the arguments raised on appeal by the municipal defendants because we agree that absence of sufficient proof that Vippolis's injuries were inflicted pursuant to a municipal policy requires dismissal of the complaint.

## DISCUSSION

The Supreme Court has recently considered the issue of whether a municipality's liability under section 1983, authorized in *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), can be predicated on evidence of a single episode of unconstitutional action taken by a municipal employee. *Oklahoma City v. Tuttle*, —— U.S. ——, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Though, regrettably, the Court did not issue a majority opinion for the guidance of lower courts on this frequently litigated issue, both Justice Rehnquist's plurality opinion for four members of the Court and Justice Brennan's concurring opinion for three members of the Court make it clear

---

3. We do not decide whether the good-faith defense, now limited to the single inquiry of whether circumstances existed to justify an objectively reasonable good-faith belief in the lawfulness of the defendant's actions, *see Harlow v.* *Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Pollnow v. Glennon*, 757 F.2d 496 (2d Cir.1985), is applicable to claims for denial of constitutional rights based on use of excessive force and malicious prosecution.

that the plaintiff's evidence in this case is insufficient to support municipal liability.

■■■ A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that the municipality was, in the language of the statute, the "person who ... subject[ed], or cause[d] [him] to be subjected," to the deprivation of his constitutional rights, 42 U.S.C. § 1983. As explained in *Tuttle*, this means that an official policy or custom must be shown to be the cause of the deprivation of constitutional rights. *Id.* at ——, 105 S.Ct. at 2433 (plurality opinion); *id.* at —— U.S. at ——, 105 S.Ct. at 2437 (Brennan, J., concurring). The Court further explained that this element of causation has two components. The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer. Second, the plaintiff must establish a causal connection—an "affirmative link"—between the policy and the deprivation of his constitutional rights. *Id.* at —— & n. 8, 105 S.Ct. at 2436 & n. 8 (plurality opinion); *id.* at ——, 105 S.Ct. at 2439 (Brennan, J., concurring). The jury instruction at issue in *Tuttle* was improper because it permitted the jury to find municipal liability without any proof beyond the wrongful action taken by the officer. The Court concluded that proof of a single incident of excessive force was not sufficient to establish either that the municipality had a policy of inadequate training of police officers or that such a policy caused the plaintiff's injury. *Id.* at ——, 105 S.Ct. at 2433–35 (plurality opinion); *id.* at ——, 105 S.Ct. at 2439–41 (Brennan, J., concurring).

■■■ Like the plaintiff in *Tuttle*, Vippolis sought to establish that his injuries were inflicted pursuant to a municipal policy of inadequate training of police officers. However, rather than ask the jury to infer a municipal policy of inadequate training from an episode of alleged unconstitutional conduct, Vippolis sought to have the policy inferred from the fact that the municipal defendants hired Squillini knowing that he had not completed a training program required by state law. This proof fails to satisfy his burden under *Monell* and *Tuttle*. Even if a decision to give one officer inadequate training could be said to amount to a municipal policy,[4] Vippolis failed to prove that Squillini's training was inadequate. Vippolis made no effort to establish what training Squillini received and what further training he would have received had the municipal defendants complied with state law. While the fact that Squillini was hired in violation of state law may have been of some relevance, that fact alone is not sufficient to establish that his training was inadequate, much less to establish the existence of a municipal policy of inadequate training of police officers. The alleged policy of inadequate training, like the policy alleged in *Tuttle*, and unlike the policy proved in *Monell*, would not itself be unconstitutional, a circumstance that increases the threshold of required proof. "[S]ome limitation must be placed on establishing municipal liability through policies that are not themselves unconstitutional, or the test set out in *Monell* will become a dead letter." *Tuttle, supra,* —— U.S. at ——, 105 S.Ct. at 2435 (plurality opinion).

Similarly, by offering no evidence on which the jury could compare the instruction provided in the training program with that actually given Squillini, Vippolis failed to prove that the alleged policy of inadequate training caused the alleged denial of his constitutional rights. For a victim of police brutality to establish the requisite

---

4. The Supreme Court may soon provide guidance on this issue since it has granted review in a case presenting the question whether a single official decision that directly causes a deprivation of constitutional rights amounts to a municipal policy for purposes of section 1983. *Pembaur v. City of Cincinnati,* —— U.S. ——, 105 S.Ct. 3475, 87 L.Ed.2d 611 (1985) (granting certiorari in 746 F.2d 337 (6th Cir.1984)). The plurality opinion in *Tuttle* reserved the issue of whether a policy of "general 'inadequate training' ... can ever meet the 'policy' requirement of *Monell*." —— U.S. at ——, 105 S.Ct. at 2436 n. 7.

causal connection between his injuries and a municipal policy of inadequate training, he must make some showing that specific deficiencies in the training given police officers led the misbehaving officer to engage in the alleged misconduct. The record contains no evidence concerning the police procedures covered by the training program to show, for example, that the program would have instructed Squillini how to make arrests and how to subdue an abusive suspect. Nor does the record show whether Squillini's on-the-job training provided inadequate instruction in these subjects. Under these circumstances, a jury could not rationally find that the municipal defendants' failure to require Squillini to participate in the training program caused Vippolis's injuries.[5]

Since Vippolis's failure to meet his burden of proving causation requires dismissal of the complaint, his cross-appeal becomes moot.[6] The judgment of the District Court is reversed, and the case is remanded to the District Court with instructions to dismiss the complaint.

---

5. The question on the special verdict form under which the jury found municipal liability did not in terms require the jury to find causation. Rather, the question asked only if the municipal defendants had hired officers in violation of state law and provided inadequate training for Squillini, thereby indicating their deliberate indifference or gross negligence. The jury charge did include instructions on the element of causation, and the jury may have understood, despite the wording of this question, that the municipal defendants could be held liable only if Vippolis established that a municipal policy caused his injuries. However, in cases where the existence of a municipal policy is in dispute, a special verdict form should ask the jury separately if the plaintiff has proved, first, the existence of a municipal policy and, second, that the policy caused his injury.

6. The cross-appeal pressed only a claim that a new trial on damages was warranted because one of the jurors was acquainted with the defendants' medical expert and an issue concerning damage computation, matters that have no possible bearing on our holding that the evidence is insufficient to support municipal liability.