**Richard G. TURK, Plaintiff,**

v.

**Police Officer Richard McCARTHY, etc., et al., Defendants.**

**No. CV 85–0672.**

United States District Court, E.D. New York.

June 10, 1987.

Richard F. Gregory, East Islip, N.Y., for plaintiff.

Peter M. Zimroth Corp. Counsel by Nicole Gordon and David Lock, New York City, for defendant City of New York.

Richard Hartman by Bruce R. Berkitsky, Little Neck, N.Y., for defendant McCarthy.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

In March 1985, plaintiff Richard G. Turk ("Turk") filed this lawsuit against defendants Richard McCarthy ("McCarthy") and the City of New York ("NYC" or "the City") seeking damages pursuant to 42 U.S.C. § 1983 and New York State common law. McCarthy, in turn, cross-claimed against NYC for indemnification of any liability and expenses he might incur as a result of the litigation. NYC has now moved for an order granting it summary judgment with regard to both Turk and McCarthy's claims against it. For the reasons set forth below, NYC's motion is granted.

## I. FACTS AND ALLEGATIONS

The parties do not appear to dispute the following facts:

On the evening of April 28, 1984, plaintiff was working at his job as a security guard at Adventureland, an amusement park located in East Farmingdale, New York. At around 8:00 that evening, Turk and at least two other security guards stopped McCarthy as he was entering the amusement park with a cup of beer and informed him that he was not allowed to bring the beer onto the park's grounds. McCarthy identified himself as a police officer and then left the park.

Approximately ten minutes later, Turk and another security guard noticed McCarthy drinking beer near a gazebo in the middle of the park. The guards again told McCarthy that he would have to leave the park and followed McCarthy and his wife and two friends as they went to the parking lot of the amusement park. While in the parking lot, Turk and McCarthy became involved in an altercation, which ended with McCarthy shooting Turk in the right side of the neck.

As a result of the incident, McCarthy was subsequently charged with Assault in the Third Degree under N.Y. Penal Law §§ 120.00(2) and 120.00(3), and, on January 14, 1986, was convicted of the charge under N.Y. Penal Law § 120.00(2).[1] McCarthy's appeal of his conviction is currently pending.

On the date of the shooting, McCarthy was a probationary police officer in the New York City Police Department ("NYCPD"). He was off-duty on the evening the incident occurred.

In his Amended Verified Complaint, Turk alleges that the shooting has caused him to suffer from ailments including numbness of the right side of the face, right shoulder and right arm, loss of movement of the neck and head, headaches and dizziness, and loss of hearing and memory. Additionally, plaintiff asserts that he has incurred and will continue to incur medical expenses and that he is unable to engage in gainful employment. Turk seeks damages based upon defendants' purported violations of various constitutional rights, McCarthy's alleged assault and battery against and false arrest of plaintiff, and negligence by NYC that purportedly led to the incident's occurrence. In his cross-claims against the City, McCarthy invokes N.Y.Gen.Mun.Law § 50-k and argues that NYC must indemnify him because he was acting within the scope of his duties as a NYC police officer at the time of the incident and because NYC acted negligently.

## II. STANDARDS FOR SUMMARY JUDGMENT

This litigation is currently in front of the Court for the purpose of the Court's rendering a decision upon the City's motion for the entry of summary judgment dismissing Turk's claims and McCarthy's cross-claims against it. A court may grant summary judgment only if "there is no genuine issue as to any material fact and .... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, ——, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *American Broadcasting Mutual Insurance Co. v. American Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272, 278–79 (2d Cir.1967), *cert. denied*, 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 752 (1972). On a motion for summary judgment, "inferences to be drawn from the underlying facts .... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). However, the sheer possibility that a factual dispute *may* exist, without more, is insufficient to overcome a convincing presentation by the moving party. *Quinn*

---

1. N.Y.Penal Law §§ 120.00(2) and 120.00(3) state:

    A person is guilty of assault in the third degree when:

    ....

    2. He recklessly causes physical injury to another person; or

3. With criminal negligence, he causes physical injury to another person by means of a deadly weapon or a dangerous instrument. Assault in the third degree is a Class A misdemeanor.

*v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980). The United States Supreme Court has recently held that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment: the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby,* — U.S. —, —, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

As to the question of the genuineness of a purported dispute regarding the facts of a case, the existence simply of a scintilla of evidence in support of a party's position is insufficient to withstand a motion for summary judgment; rather, there must be evidence upon which the finder of fact could reasonably find for the party opposing the motion. *Anderson,* — U.S. at —, 106 S.Ct. at 2512. A court, furthermore, will not allow a litigant opposing summary judgment to use mere conclusory allegations or denials as a vehicle for obtaining a trial. *Quinn,* 613 F.2d at 438. A party must do more than simply show that there may be some "metaphysical doubt" concerning the material facts. *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). As to the issue of the materiality of any dispute over given facts, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* — U.S. at —, 106 S.Ct. at 2510. Summary judgment is undoubtedly warranted, for instance, where a party has failed to make a showing sufficient to establish the existence of an element that is essential to the party's case since, in such a situation, the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex,* — U.S. at —, 106 S.Ct. at 2553.

The application of these principles governing summary judgment motions to the instant case leads the Court to conclude that the City's motion must be granted in its entirety. Neither Turk nor McCarthy has raised any disputed issues of material fact sufficient to withstand NYC's convincing arguments that it is entitled to judgment as a matter of law under the circumstances this lawsuit presents. While Turk may very well be entitled to judgment against McCarthy, this case, as the Court will demonstrate throughout the remainder of this opinion, does not present a situation in which the City can rightfully be held legally responsible for damages that may have resulted from McCarthy's actions or be required to indemnify McCarthy for any liability or expenses he may incur in connection with the litigation.

## III. TURK'S FEDERAL CLAIMS AGAINST NYC

### A. *Liability of Municipalities Under § 1983*

Turk's federal claims against NYC are premised upon 42 U.S.C. § 1983, which provides:

> *Civil action for deprivation of rights*
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress......

The liability of municipalities such as NYC under § 1983 is controlled primarily by the Supreme Court's landmark decision of *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Monell,* female employees of NYC's Department of Social Services and Board of Education filed suit under § 1983 alleging that the Department and the Board had as matters of official policy compelled pregnant employees to take unpaid leaves of absence before such leaves were medically required. Upon extensive analysis of the legislative history and language of § 1983,

*Monell* overruled the Supreme Court's previous decision of *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) insofar as that case had held local governments wholly immune from § 1983 suits, but upheld *Monroe* to the extent that *Monroe* had found that the doctrine of *respondeat superior* is not a proper ground for rendering municipalities liable under § 1983 for the constitutional torts of their employees. Justice Brennan stated for the *Monell* Court:

> Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies. Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.....

> On the other hand, the language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.

436 U.S. at 690–91, 98 S.Ct. at 2035–36.

*Monell*, as Justice Brennan later explained in a subsequent opinion for the Court, "is a case about responsibility." *Pembaur v. City of Cincinnati*, 475 U.S. 469, ——, 106 S.Ct. 1292, 1297, 89 L.Ed.2d 452 (1986). § 1983 can be the basis for imposing liability upon a municipality for its own illegal acts, but cannot be used as a means of incorporating doctrines of vicarious liability into federal law. *Monell's* " 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible. *Monell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered." *Id.*, 475 U.S. at ——, 106 S.Ct. at 1298 (emphasis in original).

In apparent recognition of *Monell's* "official policy" requirement, Turk has set forth in Count II of his Amended Verified Complaint essentially five different bases upon which the City can assertedly be held liable under § 1983 for the injuries plaintiff allegedly has suffered as a result of the April 28, 1984 incident. None of these, however, is sufficient to support a plaintiff's § 1983 claims against NYC.

**B. *Actions Under "Direction, Control and Supervision" of NYCPD and Pursuant to "Official Duties" as Police Officer***

■ Turk claims that on the evening of the shooting incident McCarthy was "acting under the direction, control and supervision" of the NYCPD and "pursuant to his official duties" a NYC police officer. This assertion ultimately boils down to a contention that McCarthy was acting "under color of law" at the time of his confrontations with Turk. However, even if the Court were to accept for the sake of argument the validity of plaintiff's position that McCarthy's actions were taken under "color of law" for purposes of § 1983, rather than merely in the course of a personal dispute, *see, e.g., Bonsignore v. City of New York*, 683 F.2d 635 (2d Cir.1982); *Delcambre v. Delcambre*, 635 F.2d 407 (5th

Cir.1981), plaintiff's allegation is inadequate to support a finding of the City's liability under § 1983: The mere fact that a police officer may have been acting "under the direction, control and supervision" of the municipal department that employs him in no way demonstrates the existence of an official policy or custom along the lines of that required by *Monell.*

### C. *Negligent Failure to Train, Supervise, or Discipline McCarthy*

■ Turk alleges that NYC "negligently failed to instruct, supervise, train, control and discipline" McCarthy regarding his duties as to, among other things, arrests of citizens and the use of excessive or deadly physical force. Plaintiff's assertion of such negligence, however, is insufficient to warrant the imposition of § 1983 liability upon NYC for at least two reasons.

First, it is highly questionable whether negligent training, supervision, or discipline of a single police officer, even if proven, can properly be held to constitute an official policy or custom actionable under the guidelines the Supreme Court laid down in *Monell.* In *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), the Supreme Court held that the occurrence of the single incident of excessive force at issue in that case was insufficient proof of a municipal policy of inadequate police officer training and supervision, 471 U.S. at 819–24, 105 S.Ct. 2434–36 (plurality opinion); 471 U.S. at 828–33, 105 S.Ct. at 2439–41 (Brennan, J., concurring), and in *Dodd v. City of Norwich,* 815 F.2d 862, 867 (2d Cir.1987), the Second Circuit relied upon the Supreme Court's decision in *Tuttle* as support for the proposition that "a single brutal act by a low-level police official is insufficient to establish a policy that would render [a] city liable." *See also Vippolis v. Village of Haverstraw,* 768 F.2d 40 (2d Cir.1985), *cert. denied,* —— U.S. ——, 107 S.Ct. 1369, 94 L.Ed.2d 685 (1987) (dismissing lawsuit that sought to have policy of inadequate training inferred from fact that one police officer was hired without having completed training program required by state law).

Second, even if the training, supervision, or discipline of one officer might under a specific set of circumstances give rise to the liability of a municipality under § 1983, *cf. Pembaur,* 475 U.S. 469, 106 S.Ct. 1292 (forcible entry of employer's premises upon instructions from county prosecutor to "go in and get" employees thought to be inside provides "appropriate circumstances" for imposition of § 1983 liability based upon "single decision by municipal policymakers"), Turk has failed to demonstrate that NYC's training, supervision, or disciplinary procedures are inadequate in any relevant respect or in any way "caused" the incident that resulted in Turk's shooting. Unlike the situations presented by cases such as *Dodd,* where the plaintiff's expert testified that the city's training procedure regarding placement of an officer's gun during handcuffing of suspects was contrary to most cities' practice and constituted gross negligence, or *Fiacco v. City of Rensselaer, New York,* 783 F.2d 319 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987), where the plaintiff introduced evidence as to the city's official procedures for and actual handling of claims of police brutality lodged with the city in support of her contention of a policy of negligent supervision of officers and deliberate indifference to officers' use of excessive force, Turk has presented to the Court absolutely no relevant evidence substantiating his contentions regarding NYC's purportedly faulty procedures or disputing the evidence the City has put forth for the purpose of illustrating the propriety of its training, supervisory, and disciplinary policies. *See Skorupski v. County of Suffolk,* 652 F.Supp. 690 (E.D. N.Y.1987) (granting municipal defendants summary judgment because of plaintiffs' failure to present evidence supporting claim of policy of non-supervision and deliberate indifference to police officers' excessive use of force or contradicting evidence presented by defendants); *Arancibia v. Berry,* 603 F.Supp. 931 (S.D.N.Y.1985) (granting motion for summary judgment where, *inter alia,* plaintiff presented no evidence to corroborate allegations of deficiencies in training or review policy or con-

travene NYC's evidence); *Cattan v. State of New York*, 523 F.Supp. 598 (S.D.N.Y. 1981) (same). To the contrary, William Tracy, the witness plaintiff has designated as his expert on police procedures for the actual trial of this case, testified at his deposition that the City's procedures were adequate to provide the City with a body of qualified officers. Moreover, in his statement of facts filed pursuant to the Eastern and Southern Districts of New York's Civil Rule 3(g), plaintiff appears to concede NYC's contention that the City "has in place thorough and effective procedures for the selection of appropriate candidates for the position of police officer." Turk's Statement Pursuant to Rule 3(g) ¶ m; NYC's Statement Pursuant to Rule 3(g) ¶ 28.

Turk, therefore, has failed to comply with the requirement that, in order "to establish the requisite connection between his injuries and a municipal policy of inadequate training, he must make some showing that specific deficiencies in the training given police officers led the misbehaving officer to engage in the alleged misconduct." *Vippolis*, 768 F.2d at 44–45. *See also Batista v. Rodriguez*, 702 F.2d 393 (2d Cir.1983).

### D. *Knowledge of McCarthy's Purported "Dangerous Propensities" and "Psychological Disorders"*

■ Turk alleges in his complaint that NYC knew or should have known that McCarthy possessed "dangerous propensities" and "psychological disorders" that made him unfit to perform the duties of a police officer and be in possession of a firearm and therefore could have prevented McCarthy's commission of wrongs against plaintiff. Plaintiff, however, has produced no evidence whatsoever to support this claim or dispute the evidence the City produced discussing its psychological screening procedures for candidates seeking appointments as police officers. *See Arancibia*, 603 F.Supp. 931 (granting motion for summary judgment where, *inter alia*, plaintiff produced no evidence supporting allegations of officers' propensities toward improper behavior and NYC's grossly negligent and indifferent policy toward officers' improprieties); *Cattan*, 523 F.Supp.

598 (same). Furthermore, plaintiff's Statement Pursuant to Rule 3(g) declares to be "uncontested" NYC's assertion that "[d]efendant McCarthy underwent the standard background and character investigation as well as the medical and psychological examination required of all police officer candidates" and that "[t]his investigation revealed that McCarthy was a suitable candidate for the position of police officer, and no personality traits incompatible with the duties of a police officer were found." Turk's Statement Pursuant to Rule 3(g) ¶ n; NYC's Statement Pursuant to Rule 3(g) ¶ 29.

### E. *Failure to Enforce Applicable Laws and Regulations Concerning Use of Deadly Force*

■ Plaintiff asserts that NYC failed to enforce applicable state laws and NYCPD regulations concerning police officers' use of deadly physical force, thereby creating "an atmosphere of lawlessness" that, presumably, led to the April 28, 1984 incident. Again, however, plaintiff has failed to place before the Court any evidence sufficient to support his claim or contravene the City's evidence that the NYCPD maintains several active investigative divisions that monitor allegations of, among other things, the use of excessive force by officers. In fact, plaintiff's own expert William Tracy went so far as to state at his deposition that, in his opinion, the Firearms Discharge Review Board, which investigates whether police shootings are justified and within NYCPD guidelines, arrived at the appropriate conclusion in over ninety percent of the incidents it reviewed.

### F. *Failure Properly to Train or Supervise Police Officers or Promulgate Regulations Concerning Carrying of Firearms*

Turk contends that NYC failed properly to train or supervise police officers or promulgate regulations concerning the carrying of firearms off-duty. Specifically, Turk asserts that the City allowed and condoned the practice of off-duty officers carrying firearms in situations in which they would be consuming alcoholic bever-

ages and took no steps to establish a policy that would prevent the carrying of firearms in such situations. Plaintiff further claims that during the five year period preceding the altercation between Turk and McCarthy more than fifty events involving the unlawful or improper use of firearms had resulted in the death or wounding of citizens and that NYC knew or should have known that the incidence of unlawful or improper use of firearms by off-duty police officers is directly related to the consumption of alcohol by such officers. Finally, plaintiff argues that officers involved in the unlawful or improper use of firearms were rarely discharged or otherwise disciplined with the result that there became established a persistent and continuing pattern and practice of off-duty police officers using unjustifiable deadly physical force.

■ Review of the evidence placed before the Court, however, reveals that the City's rules and procedures regarding the carrying of firearms off-duty and the consumption of alcohol by police officers are not so inadequate as to subject NYC to § 1983 liability in this lawsuit under the standards the Supreme Court formulated in *Monell*. While it is true that the regulations in place at the time of the April 28, 1984 incident did not explicitly prohibit off-duty officers from carrying firearms while drinking alcoholic beverages, they quite clearly instructed officers not to carry firearms in inappropriate situations and prohibited officers from ever consuming quantities of alcohol that might affect their judgment. NYCPD Patrol Guide § 105–1 stated that off-duty officers should be unarmed when engaging in activities that in their discretion appear to indicate that it would be unadvisable to carry a firearm. Patrol Guide § 104–1 required that officers be fit for duty at *all* times and stated unequivocally that officers were never to consume intoxicants to the extent that they became unfit for duty. Patrol Guide § 118–14 noted that common sense standards were to be used in determining if an officer was unfit for duty due to intoxication. Plaintiff's witness Tracy stated at his deposition that while the rules set forth in the Patrol Guide could have been "a little stronger," they constituted "appropri-ate" guidelines for officers' behavior. Turk's claim that the City condoned the carrying of firearms during the consumption of alcohol and failed to establish any policy designed to prevent the carrying of firearms in such situations is therefore simply inaccurate.

■ Turk has also failed to offer evidence sufficient to support his assertions regarding improper shootings of citizens by police officers and the relationship between such shootings and the consumption of alcohol. The evidence upon which Turk relies consists primarily of statements made in a *Newsday* article on the use of deadly force by off-duty police officers in the State of New York and the deposition testimony of William Fitzpatrick, a witness plaintiff originally retained as an expert, that fifty percent of off-duty shootings involve alcohol "in some way." The information contained in the *Newsday* article is not sufficiently detailed or documented to provide a foundation by itself for plaintiff's contentions, and plaintiff has not supplied the Court with any specific evidence showing whether the shootings the article and Fitzpatrick discussed were justified or unjustified, the exact role alcohol played in the shootings, and the like. Fitzpatrick, for instance, did not specify how much alcohol was involved in the incidents to which he was referring or whether the fact alcohol had been consumed was in any way a causal factor in any of the shootings. Moreover, William Tracy, the witness plaintiff currently designates as his expert on police procedures, conceded that he is unaware of any statistics concerning the use of firearms by off-duty police officers who had been drinking and had no opinion on the link between drinking by off-duty officers and improper discharge of firearms. Finally, and most importantly, plaintiff has completely failed to furnish the Court with any evidence tending to show that the City's policies in any manner caused or were otherwise responsible for any alcohol-related shootings, including McCarthy's shooting of Turk. In order to establish a municipality's liability under § 1983, a plaintiff must demonstrate not only the existence of a municipal policy or custom but also a causal connection between that policy or custom and the depri-

vation of constitutional rights. *Tuttle*, 471 U.S. at 823, 105 S.Ct. at 2436 (plurality opinion), *Id.*, 471 U.S. at 829–30, 105 S.Ct. at 2439 (Brennan, J., concurring); *Dodd*, 815 F.2d at 867; *Batista*, 702 F.2d at 393.

Turk's allegation concerning NYC's purported failure to discharge or otherwise discipline officers who unlawfully or improperly used their firearms is similarly deficient. Again, plaintiff relies upon the *Newsday* article and Fitzpatrick's deposition to support his position. Plaintiff, however, has produced no concrete evidence to show that the City's multiple investigative divisions that monitor the conduct of police officers, including the Inspectional Services Bureau, the Internal Affairs Division, the Civilian Complaint Review Board, and the Firearms Discharge Review Board, were not functioning properly in their oversight of officers and investigations of incidents involving discharge of a firearm by an officer. As the Court noted above, *supra* p. 1532, plaintiff's expert witness Tracy was himself of the opinion that the Firearms Discharge Review Board, which must review every incident in which an on-duty or off-duty police officer discharges his weapon to determine whether the discharge was justified and within departmental guidelines, made the appropriate recommendation in over ninety percent of the cases it investigated. Tracy additionally testified that, in his view, the disciplinary measures the City imposed where an off-duty officer had improperly discharged a firearm were adequate. Plaintiff has presented to the Court no material evidence sufficient to withstand a motion for summary judgment that demonstrates supposed inadequacies in the City's handling of officers who unlawfully or improperly discharged their firearms or the existence of any "pattern or practice" of off-duty police officers using unjustifiable deadly physical force. Furthermore, even if the Court were to assume *arguendo* that Turk has to some degree shown certain inadequacies and the unjustifiable use of deadly force, he has brought to the Court's attention absolutely no evidence that might supply the causal link between any inadequacies on the City's part and unjustifiable force by its police officers necessary to impose any liability

on the City under § 1983 for McCarthy's altercation with Turk. *See Tuttle*, 471 U.S. at 822, 105 S.Ct. at 2436 (plurality opinion), *id.*, 471 U.S. at 828, 105 S.Ct. at 2439 (Brennan, J., concurring); *Dodd*, 815 F.2d at 867; *Batista*, 702 F.2d at 393.

The situation furnished by this case is very much at one with that at issue in *La Rocco v. City of New York*, 468 F.Supp. 218 (E.D.N.Y.1979). *La Rocco* was a lawsuit claiming that an off-duty NYC policeman had wrongfully shot and wounded one Michael La Rocco during the course of an arrest in Nassau County, New York. Plaintiffs asserted that the constitutional deprivations alleged stemmed from the City's policy, regulation, or custom regarding the carrying of weapons by off-duty officers. Then-District Judge Pratt first held that, given the regulations in effect at the time of the shooting, the officer's action could in no way be viewed as implementing or executing a policy or regulation officially adopted by the City. Judge Pratt then went on to address plaintiffs' contention that, even if it was not an officially adopted NYC policy or regulation for police officers to be armed while off-duty outside the City, it was at least a custom actionable under *Monell*. Judge Pratt found:

> The custom for city police officers to carry their guns while off duty and outside the city, assuming it to exist, is at best facially neutral. Clearly, it was not execution of the custom, but [the police officer's] possible abuse of the privilege, that inflicted the injury here. Thus, the city as an entity is not responsible under § 1983.
>
> To accept plaintiff's [sic] argument would be tantamount to holding the city vicariously liable for a tortious act of its employee, a result the Supreme Court in *Monell* expressly declined to permit.

468 F.Supp. at 220.

This Court is in complete accordance with the holding in *La Rocco* and concludes that a similar result is warranted under the circumstances presented by the case now at bar.

### G. *Conclusion*

As the Court has discussed throughout this section of its opinion, Turk has not presented to the Court evidence in support of his federal claims against NYC sufficient to survive the City's motion for summary judgment. The purported bases for NYC's liability under § 1983 that Turk has set forth are either inadequate to state a § 1983 claim under the standards the Supreme Court established in *Monell* or based upon evidence so insubstantial that it cannot justifiably prevent the entry of summary judgment in favor of the City under the principles applicable to motions such as that filed by the City. The Court therefore grants NYC's motion for an order granting it summary judgment on Turk's federal claims against it.

### IV. TURK'S NEGLIGENCE CLAIM AGAINST NYC

■ Generally, where a federal court has disposed of the federal claims presented by a case by way of summary judgment, it should abstain from exercising pendent jurisdiction over the remaining state law claims. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176 (2d Cir.1974). Where, however, a court finds a significant overlap between the federal and state law issues in a case and concludes that "considerations of judicial economy, convenience and fairness to litigants," *United Mine Workers*, 383 U.S. at 726, 86 S.Ct. at 1139, warrant retention of the state claims, it may, in its discretion, exercise its power of pendent jurisdiction over such claims and decide them on the merits. *Walker v. Time Life Films*, 784 F.2d 44 (2d Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986). Turk's remaining claim against NYC, a claim of common-law negligence, is premised on substantially the same contentions as are his federal claims. Turk's negligence count essentially realleges a number of the specific bases upon which Turk attempted to root his § 1983 claim against NYC, *i.e.*, Turk asserts as grounds for his negligence claim that on the evening of April 28, 1984 McCarthy was acting under the direction, supervision, and control of the NYCPD, that NYC negligently failed to examine and investigate McCarthy's background prior to his appointment as a NYC police officer and should have known that he was psychologically unsuited to perform the duties of a police officer and carry a firearm, and that NYC negligently failed to supervise, train, and discipline McCarthy subsequent to his becoming a NYC police officer, with the result that NYC failed to prevent the commission of wrongs against plaintiff that it had the power to prevent through the exercise of reasonable diligence. Given the close relationship between plaintiffs' federal and state claims, it would be a needless waste of both the state judicial system's and parties' resources for this Court to decline to rule upon Turk's common-law claim against the City. Accordingly, the Court will now turn its attention to Turk's final claim against NYC.

The Court has already held in its rulings concerning Turk's § 1983 claims against NYC that Turk has failed to produce evidence sufficient to support certain of the allegations contained in the negligence count of his complaint, for instance, his contentions that NYC did not properly screen McCarthy for psychological disorders and that the City did not adequately train, supervise, or discipline McCarthy. However, even if the Court were to put to one side the evidentiary failures it has already noted, Turk's negligence claim against the City still runs afoul of the basic requirement of New York State common law that an employer such as the City can only be held liable for the acts of an employee such as McCarthy where it can be shown that the employee was acting "within the scope of his employment" at the time he undertook the relevant actions.

It is hornbook law in New York that an employer is only liable for the actions of an employee where the employee was engaged in the furtherance of the employer's business and the employer was or could have been exercising some control over the employee's activities at the time of the employee's wrongdoing. *E.g., Lundberg v. State of New York*, 25 N.Y.2d 467, 306

N.Y.S.2d 947, 255 N.E.2d 177 (1969). As one New York Court stated:

> Regardless of the way the rule is phrased, an employee's actions are not within the scope of employment unless the purpose of performing such actions is to further the employer's interest, or to carry out duties incumbent upon the employee in furthering the employer's business. Thus, where an employee's conduct is brought on by a matter wholly personal in nature, the source of which is not job-related, his actions cannot be said to fall within the scope of his employment.

*Stavitz v. City of New York*, 98 A.D.2d 529, 531, 471 N.Y.S.2d 272, 274 (1st Dep't 1984).

■ The undisputed facts regarding the events of April 28, 1984 reveal that McCarthy was not acting within the scope of his employment during his confrontations with Turk. McCarthy was not at the amusement park for any official police purpose, but rather for his own recreation while he was off-duty. The altercation between Turk and McCarthy arose out of McCarthy's attempt to drink beer on the amusement park grounds. McCarthy's identification of himself as a police office was manifestly designed as a means of trying to obtain special treatment from the security guards and can in no way be properly interpreted as an action designed to further the interests of the NYCPD.

McCarthy asserts that he intended to arrest Turk and that the shooting occurred during his attempt to do so, a claim which Turk has apparently accepted for purposes of his opposition to NYC's motion. The validity of this contention is immaterial to the resolution of the question of whether McCarthy was acting within the scope of his employment, however. New York case law makes clear that a police officer's arrest of a citizen does not provide a basis for governmental liability where the arrest stems from a purely personal dispute rather than constituting an action taken in furtherance of the officer's duties as a member of the police force. Thus, the *Stavitz* court overturned a jury verdict against the City in a situation where an off-duty police officer had arrested his neighbor and his neighbor's son after allegedly assaulting them in the course of a dispute over construction work being done on the neighbor's property. Similarly, *Nisbett v. State of New York*, 31 Misc.2d 32, 222 N.Y.S.2d 867 (N.Y.Ct.Cl.1961), ruled that New York State could not be held liable for an alleged assault and battery by an off-duty state trooper even though the trooper had, at the suggestion of the local district attorney, arrested the individuals involved in the incident.

Accordingly, the Court grants NYC's motion for summary judgment in its favor on Turk's claim of negligence against it.

## V. McCARTHY'S CROSS–CLAIMS AGAINST NYC

■ McCarthy has cross-claimed against NYC, arguing that, under N.Y.Gen. Mun.Law § 50–k, the City must indemnify him for any liability and expenses he may incur as a result of this litigation. As is the case with Turk's state law claim against NYC, McCarthy's cross-claims are tightly interwoven with the federal law issues the lawsuit presents. McCarthy's indemnification claims in large part derive from Turk's § 1983 claims against him and are based to a certain extent upon the contentions of NYC's allegedly improper acts of both commission and omission that form the core of Turk's § 1983 claims against the City. The Court, therefore, will exercise its power of pendent jurisdiction over McCarthy's cross-claims and determine the validity of the only claims that, given the Court's rulings on the other prongs of NYC's motion, still remain pending against the City.

N.Y.Gen.Mun.Law § 50–k(2) and (3), the subsections of § 50–k upon which McCarthy bases his cross-claims against the City, read:

> 2. At the request of the employee and upon compliance by the employee with the provisions of subdivision four of this section, the city shall provide for the defense of an employee of any agency in any civil action or proceeding in any state or federal court including actions under sections nineteen hundred eighty-

one through nineteen hundred eighty-eight of title forty-two of the United States code arising out of any alleged act or omission which the corporation counsel finds occurred while the employee was acting within the scope of his public employment and in the discharge of his duties and was not in violation of any rule or regulation of his agency at the time the alleged act or omission occurred. This duty to provide for a defense shall not arise where such civil action or proceeding is brought by or on behalf of the city or state or an agency of either.

3. The city shall indemnify and save harmless its employees in the amount of any judgment obtained against such employees in any state or federal court, or in the amount of any settlement of a claim approved by the corporation counsel and the comptroller, provided that the act or omission from which such judgment or settlement arose occurred while the employee was acting within the scope of his public employment and in the discharge of his duties and was not in violation of any rule or regulation of his agency at the time the alleged damages were sustained; the duty to indemnify and save harmless prescribed by this subdivision shall not arise where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee.

■ These relevant subsections of § 50–k state explicitly that they are applicable only where the employee was acting within the scope of his employment. The Court has held that McCarthy was not acting within the scope of his employment at the time of the April 28, 1984 incident that underlies this lawsuit. Accordingly, McCarthy's cross-claims against the City pursuant to § 50–k cannot withstand NYC's motion for summary judgment.

## VI. CONCLUSION

For the reasons discussed throughout the Court's opinion, NYC's motion for an order granting it summary judgment with regard to Turk and McCarthy's claims against it is granted in its entirety. The Clerk of the Court is directed to enter judgment in favor of NYC dismissing both the claims against NYC contained in Turk's Amended Verified Complaint and the cross-claims against NYC McCarthy sets forth in his Notice of Appearance and Verified Answer. Plaintiff's case shall proceed solely against McCarthy. Counsel for Turk and McCarthy are directed to appear for a conference at 9:00 A.M. on July 1, 1987 at the Hauppauge Courthouse of the United States District Court for the Eastern District of New York.

SO ORDERED.