Frances DAWES, Administratrix of the Estate of Larry Dawes, and in her own behalf, Plaintiff,

v.

John PELLECHIA, individually and as a police officer in and of the City of New York; Michael Dzielski, individually and as a police officer in and of the City of New York; James J. Mullan, individually and as a police officer in and of the City of New York; Neil Marchesano, individually and as a police officer in and of the City of New York; the New York City Police Department, a governmental agency; and the City of New York, a municipal entity, Defendants.

No. 83 CV 2678.

United States District Court, E.D. New York.

June 7, 1988.

Harold F. Goldwasser, New York City, for plaintiff.

Norma Kerlin, Asst. Corp. Counsel (Peter L. Zimroth, Corp. Counsel of the City of New York), for defendants City of New York and New York City Police Dept.

McLAUGHLIN, District Judge.

Defendants the City of New York and the New York City Police Department move pursuant to Fed.R.Civ.P. 56 for an order granting summary judgment in their favor. For the reasons discussed below, the motion is granted.

## FACTS

On March 15, 1983, plaintiff's decedent, Larry Dawes, died after a pursuit by New York City Police Officers. In her Amended Complaint, plaintiff alleges that Dawes, who was operating a moped on a sidewalk in the area of Fulton and Washington Streets, was pursued by the officers, in their police car, at reckless high speed. The officers allegedly deliberately rammed Dawes' moped off the sidewalk and into a parked car.[1] Thereupon, the officers allegedly abused and beat Dawes. Amended Complaint ¶ 16.

Plaintiff brought this action in 1983 under 42 U.S.C. §§ 1981, 1983 and 1988 alleging violations of the eighth, thirteenth and fourteenth amendments to the Constitution.[2] Paragraph 28 of the Amended Complaint is levelled against the New York City Police Department and the City of New York ("the City defendants"). The allegation states:

It is believed that the defendant New York City Police Department and defendant City of New York failed to properly screen and thereafter properly train and supervise the defendant police officers such that they entrusted, improperly and illegally these individuals with a weapon of deadly force in a reckless and improper manner and in a manner violative of rights guaranteed to the plaintiff's decedent under the laws and Constitutions of the State of New York and the United States.

The City defendants now move for summary judgment arguing that plaintiff has failed to allege, and cannot prove, that she was deprived of a federally guaranteed right as a result of an official custom or policy of the City. Discovery has been completed and the parties have submitted to the Court both a Proposed Pre–Trial Order and an Amended Proposed Pre–Trial Order.

## DISCUSSION

### I. *The Legal Standard*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In this regard, plaintiff's argument, that the City defendants' failure to submit factual support, affidavits and the like pursuant to Rule 56(e), precludes summary judgment is incorrect.[3]

---

**1.** The Amended Complaint does not allege how, or if, the police car came to be driving on the sidewalk where Dawes was operating the moped.

**2.** Plaintiff does not explain in the Amended Complaint how § 1981, which is primarily addressed to prohibit employment and other contract-related discrimination or the thirteenth amendment, which abolished slavery, are implicated in this action.

**3.** Perhaps most telling of plaintiff's misunderstanding of the law pertaining to summary judgment is his statement: "The mere fact that discovery has been concluded without such discovery conclusively revealing facts demonstrating the existence of an unlawful municipal poli-

As stated by the *Catrett* Court, although the moving party "always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of fact," there is "no express or implied requirement ... that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2553 (emphasis supplied). Thus, the Court must decide whether plaintiff can demonstrate a genuine issue of material fact that precludes summary judgment in favor of the City defendants.

■■■ To prevail against a municipal defendant in an action under 42 U.S.C. § 1983, plaintiff must show that the municipality employed a custom or official policy that caused her to be deprived of a federally guaranteed right, *Monell v. Department of Social Services,* 436 U.S. 658, 692–94, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983), and " 'a causal connection ... between the policy and the deprivation of his constitutional rights.' " *Sarus v. Rotundo,* 831 F.2d 397, 400 (2d Cir.1987) (quoting *Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985), *cert. denied,* —— U.S. ——, 107 S.Ct. 1369, 94 L.Ed.2d 685 (1987)). Where, as here, the existence of a municipal policy is disputed, it can be inferred from "informal acts or omissions of supervisory municipal officials." *Turpin v. Mailet,* 619 F.2d 196, 200 (2d Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980). However, in a case like this, the inference arises only when plaintiff can demonstrate that "the municipality's failure to supervise or prop-

erly train its police force is so severe as to constitute 'gross negligence' or 'deliberate indifference' to [her] rights." *Sarus, supra,* 831 F.2d at 401.

## II. *The Alleged Municipal Policies*

Plaintiff claims that she has amassed enough evidence to present a triable issue of fact regarding an actionable municipal policy. Indeed, she claims that she has alleged and can prove three municipal policies that are causally connected to the deprivation of her rights: (1) the City's failure to properly screen, train and supervise its police officers on the use of high-speed chases and the amount of force that should be used in making an arrest; (2) the City's policy to delegate to individual police officers decisions regarding the initiation and continuation of the high-speed chase of Dawes; and (3) the City's failure to correct violations of its rules and guidelines by its police officers concerning the use of excessive and deadly force and high-speed auto pursuits.[4]

### A. *The City Defendants' Alleged Failure to Correct Violations of its Rules by Police Officers*

It is undisputed that the City Police Department has a policy regarding high-speed chases. The policy is embodied in a 1977 memorandum to all commands from the Chief of Operations of the New York City Police Department ("Chief Operations Officer's Memorandum") and reads, in pertinent part:

Department Policy requires AN OFFICER TO TERMINATE A HIGH SPEED AUTOMOBILE CHASE WHENEVER THE RISKS TO HIS OWN SAFETY

cy does not permit an inference that such an unlawful policy does not exist." Plaintiff's Memorandum in Opposition, at 17–18.

4. Plaintiff claims that the second and third municipal policies are adequately pled in ¶¶ 16, 17, 18, and 19 and incorporated by reference into paragraph 28. Paragraphs 16 and 17 allege that the individual police officers, acting in their official capacity, engaged in a reckless high-speed chase of Dawes and deliberately "rammed" Dawes' moped into a parked car. Paragraph 18 alleges that the individual officers

engaged in illegal conduct that violated rights guaranteed to Dawes and plaintiff under the Constitution. Paragraph 19 alleges that the officers violated the rules of the New York City Police Department regarding the utilization of deadly force. Paragraphs 16–19, however, cannot be read as adequately pleading the second and third alleged municipal policies. The Court will treat plaintiff's opposition papers as a motion pursuant to Fed.R.Civ.P. 15(b). Nevertheless, the Court finds that the new allegations are not supported by the evidence.

AND THE SAFETY OF OTHERS OUT-WEIGH THE DANGER TO THE COMMUNITY IF THE SUSPECT IS NOT IMMEDIATELY APPREHENDED.

(Emphasis supplied).

█ Plaintiff claims that because the chase of Dawes was not called off by either the individual police officers or the field supervisor, Sergeant Richard Bestafka,[5] and because the chase was outweighed by risk to life, a violation of the department's high-speed chase policy occurred. No evidence whatsoever has been produced by plaintiff that demonstrates a City policy of failing to correct violations of department rules, even accepting as true that such a violation occurred here. Absent "other evidence, mere proof of a single incident of errant behavior is an insufficient basis for finding that a municipal policy caused plaintiff's injury." *Sarus, supra,* 831 F.2d at 402–03 (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436–37, 85 L.Ed.2d 791 (1985)); *see Turpin, supra,* 619 F.2d at 202; *Singelton v. City of New York,* 632 F.2d 185, 195 (2d Cir. 1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981).

B. *The City Defendants' Alleged Failure to Screen, Train and Supervise The Defendant Officers*

█ Essentially the same flaws discussed above exists in plaintiff's claim that the City defendants employed a policy of failing to properly screen, train and supervise the police officers. Specifically, plaintiff avers that through the testimony of the individual defendant officers, their sergeant, and two trainers from the Police Department, she will prove that the " 'official policy' of the City of New York in preparing and training its police officers and supervisors in high-speed auto pursuit and vehicle chase procedures is woefully

inadequate and that said inadequate training caused the deprivation of plaintiff's decedent's constitutional rights." Plaintiff's Statement Pursuant to Rule 9(g) [sic] in Opposition to Defendants' Motion for Summary Judgment, at 7. The evidence plaintiff submits pursuant to Rule 56(e), however, if anything, supports a contrary conclusion.

Plaintiff has submitted the Chief Operations Officer's Memorandum, excerpts from the deposition testimony of the four defendant officers and Sergeant Bestafka, and the answers to plaintiff's interrogatories 18 and 19. The testimony reveals that the officers received training in high-speed chases in furtherance of the City Operations Officer's Memorandum both at the Police Academy and later while on duty and that the use of "extreme caution" was emphasized. The interrogatory answers state that officers are given training on the use of deadly force and high-speed chases. No further evidence of an official policy or custom of inadequate training has been adduced.[6] Plaintiff has not submitted any evidence from which this Court could conclude that the training was inadequate, much less find that there exists a genuine issue of material fact regarding such severe inadequacy that it amounts to gross negligence or deliberate indifference. Nor does plaintiff intend to call an expert at trial to aid the trier of fact in determining the "adequacy" of police training. Although expert testimony is not necessarily required in a § 1983 action, the lack thereof can prove dispositive. *See Sarus, supra,* 831 F.2d at 402 n. 3 (citing *Tuttle, supra,* 471 U.S. at 823–24, 105 S.Ct. at 2436–37).

Based on all the evidence submitted by plaintiff, I am compelled to conclude that the Police Department established rules re-

---

**5.** Sergeant Bestafka, a non-party, who was the field supervisor, has the authority once he is notified of a chase, to order the chase terminated. *See* New York City Police Department—Communications Division, Radio Dispatcher's Guide, October 1982.

**6.** Plaintiff claims that a policy of inadequate training will be proved from the testimony of the four defendant officers, their sergeant and two trainers from the Police Department. In opposition to this motion plaintiff submits excerpts from the deposition testimony of the defendant officers and the sergeant only. I must conclude that the deposition testimony, if any, of the two trainers do not aid plaintiff in defending this motion.

garding high-speed chases and that individual police officers were trained pursuant to these rules. This, of course, negates municipal liability.

### C. The City's Policy to Delegate to Individual Police Officers the Decision to Initiate and Continue The High–Speed Chase

Plaintiff's final theory is that the City is liable for the decisions of the four defendant officers and Sergeant Bestafka, the field supervisor, *see supra* note 3, because the officers and their sergeant are the government's authorized decisionmakers regarding the initiation and continuation of the alleged high-speed chase that caused Dawes' death. The logical inconsistency of this argument, when viewed with plaintiff's first two theories, has not gone unnoticed by this Court.

Municipal liability under § 1983 may attach to a single decision of a municipal official only when "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). Plaintiff's argument denominating the individual officers as official policymakers is undermined by the existence of the Chief Operations Officer's Memorandum. Plaintiff concedes that the municipal policies regarding high-speed chases are set by the Police Department itself, not the individual officers. *See supra* Part II A & B. Plaintiff has failed to submit any evidence whatsoever to support this third theory that the Chief Operations Officer's Memorandum does not, in reality, represent the official policy of the Police Department. Although the individual officers have discretion in the conduct of high-speed chases, that fact alone will not render the municipality liable. Because the power to establish a policy regarding high-speed chases in entrusted to the Police Department, an individual officer's exercise of his discretion pursuant to that policy, even if exercised in an unconstitutional manner, is an act of the officer, not the municipality. *See Pembaur, supra,* 475 U.S. at 481–83 & n. 12, 106 S.Ct. at 1300.

In essence, plaintiff seeks to hold a municipality liable anytime an official municipal policy vests discretion in municipal employees. As the theory goes, anytime a low-level municipal employee exercises discretion, it is the exercise of the discretion, not the official municipal policy that is the source of the discretion, that forms the basis of municipal liability. To accept plaintiff's measure of the reach of *Pembaur* would, in effect, swallow the *Monell* rule. The *Pembaur* Court itself, while extending municipal liability to a single decision by an official responsible for establishing final policy, painstakingly explained that the extension did not contravene the rejection of *respondeat superior* established in *Monell. See Pembaur, supra,* 475 U.S. at 483, 106 S.Ct. at 1300. Thus, plaintiff's final theory of municipal liability must be rejected.

### CONCLUSION

Accordingly, the City Defendants' motion for summary judgment is hereby granted.

SO ORDERED.